OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Defendants have been convicted of criminal sale of a controlled substance, third degree (Penal Law § 220.39 [1]) on the basis of their offer to sell crack cocaine to an undercover police officer. They argue that there was insufficient evidence to support conviction on an “offer to sell” theory, and that the jury instructions failed to state the elements of the crime. Neither argument has merit.
 

 On April 24, 1998, an undercover police officer went to a Manhattan street corner where he had previously purchased crack cocaine, found a group gathered there, and asked one of them where he could obtain some crack. The reply came from another person, defendant Rodney Samuels, who asked what the officer wanted. The officer said “four nicks.” Samuels replied that only “dimes” — $10 bags — were available, and the officer requested two “dimes.”
 

 
 *23
 
 Samuels then invited the officer to walk away with him, and as the two were walking, Samuels asked the officer if he was in law enforcement. Having received assurances to the contrary, Samuels approached an automobile in which defendant Edward Henderson was sitting with a third man, Vernon Price. While Samuels and Henderson consulted, Price got out of the car for a closer look at the undercover officer. Then Samuels sent the officer over to Henderson. The officer asked Henderson for two “dimes,” and handed him a $20 bill that the police had previously recorded.
 

 Rather than turn over the crack, Henderson then held out a pipe and told the officer to take a “hit.” The officer, seeing that the pipe contained what appeared to be crack, declined — in keeping with Police Department policy — and requested his “dimes.” Henderson replied “you’ll get it as soon as you take a hit so I know you’re not a cop.” The officer asked for the crack or his $20, but was instead again presented with the pipe, this time by Price.
 

 By now a second undercover officer (the “ghost”) had become concerned for the safety of his colleague and summoned backup officers. The backup team arrived shortly and arrested Henderson and Price. Samuels was briefly out of the officers’ sight but was arrested a few blocks away. The officers recovered no crack, no pipe and no prerecorded buy money.
 
 *
 

 A grand jury indicted Henderson and Samuels for third degree sale of a controlled substance. At trial, defendants moved for dismissal, arguing that the People had presented insufficient evidence that defendants had the intent and ability to sell crack cocaine
 
 (see People v Mike,
 
 92 NY2d 996, 998 [1998]). The trial court rejected this argument as well as defendants’ request to charge the jury that the People must prove defendants’ intent and ability to consummate a sale. The Appellate Division also unanimously rejected defendants’ first argument, but one Justice dissented on the jury charge issue and granted the defendants’ motion to appeal to this Court. We now affirm.
 

 Relying on
 
 People v Mike,
 
 defendants first argue that the People presented insufficient evidence to establish that they knowingly and unlawfully sold a narcotic drug by offering to perform a sale
 
 (see
 
 Penal Law § 220.39 [1]; § 220.00 [1]). In
 
 Mike,
 
 the defendant approached two off-duty police officers and
 
 *24
 
 asked whether they wished to buy drugs. After a discussion of the quantity of drugs available, the officers went to a building indicated by the defendant but balked at surrendering their own cash. When arrested, the defendant possessed no drugs or money, and there was no evidence that he had a drug source or that the building contained drugs or had previously been the site of drug sales. We held that “in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell — i.e., that defendant had both the intent and the ability to proceed with the sale” (92 NY2d at 998). Although a postarrest statement suggested the defendant’s intent to sell, we concluded that the evidence was insufficient to establish his ability to carry out the sale.
 

 Defendants argue that here the People presented insufficient evidence of intent as well as ability. But as the Appellate Division observed, “a defendant’s intent is the product of the invisible operation of his mind,” to be determined, inevitably, on the basis of defendant’s statements and conduct (282 AD2d 102, 107). We agree that defendants’ statements evinced an intent to sell crack cocaine and that other aspects of their conduct bore the earmarks of a drug-selling operation and were likewise probative of intent.
 

 In challenging the proof of their ability to sell crack cocaine, defendants rely heavily on the failure of the police to recover drugs, pipes or buy money. But as the Appellate Division recognized, direct evidence in the form of contraband or other physical evidence is not the only adequate proof and, where the People depend on circumstantial evidence, such evidence may take many forms and need not specifically include proof of previous transactions involving the same defendants.
 

 Here, by contrast to
 
 Mike,
 
 several factors support the conclusion that defendants had the ability to sell crack cocaine. These factors include testimony that the undercover officer saw crack cocaine in defendants’ possession; that they asked him to “take a hit” and otherwise engaged in conduct typical of drug sale operations with a sophisticated division of labor and methods of thwarting the police; that they accepted payment; and that they operated at a known drug-selling location where the undercover officer had previously purchased drugs. Together, these factors support the inference that defendants were able to consummate a sale, and we have no occasion to determine whether any one or two of the factors, taken alone, would also support this conclusion.
 

 
 *25
 
 Defendants’ second contention is that the trial court erred when it declined to charge the jury on the intent and ability requirements. This case was tried a few weeks after we handed down
 
 Mike,
 
 and defendants, citing that decision, asked the trial court to charge “that in order to support the conviction under an offer to sell theory, there must be evidence of a bona fide offer to sell, that the defendants have the intent and ability to proceed with the sale.” The trial court, however, delivered a pattern charge
 
 (see
 
 CJI[NY]2d PL 220.39 [1]) closely tied to the statutory language:
 

 “A person is guilty of criminal sale of a controlled substance in the third degree when that person knowingly and unlawfully sells a narcotic drug. The term narcotic drug includes cocaine. Sell means to sell, exchange, give or dispose of to another or to offer or agree to do the same. A person knowingly sells cocaine when that person is aware that he is selling cocaine.”
 

 The court also stated, in a part of the charge addressing participation in the crime of a codefendant, that conduct is “intentional if it is done voluntarily and purposefully and with the specific intent to do some act that the law forbids.” During a colloquy, the trial court maintained that its charge set forth every element of the offense and that further elaboration would amount to “marshaling evidence” — a duty proper to counsel, not to the court — and would raise questions “as to what is the intent and what is the ability.” The Appellate Division concluded that the charge as a whole encompassed both requirements (282 AD2d at 109).
 

 The issue, then, is whether a charge is sufficient when it follows the statutory language but does not reflect, to the fullest possible extent, our elucidation of that language. In charging a jury, a court must state “the fundamental legal principles applicable to criminal cases in general” and “the material legal principles applicable to the particular case * * *” (CPL 300.10 [2]). Generally, the test of a jury instruction is “whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied”
 
 (People v Ladd,
 
 89 NY2d 893, 895 [1996] [internal quotation marks omitted]). We have long presumed that jurors have “sufficient intelligence” to make elementary logical inferences presupposed by the language of a charge, and hence that defendants are not “entitled to select the phraseology” that makes such inferences
 
 *26
 
 all the more explicit
 
 (see People v Radcliffe,
 
 232 NY 249, 254 [1921];
 
 see also People v Feerick,
 
 93 NY2d 433, 450 [1999]).
 

 Further, as the trial court recognized, the language we use to explain rulings on the sufficiency of the evidence in a particular case need not necessarily be incorporated into jury instructions in all comparable cases. The application of legal principles to concrete facts may entail exposition that, if simply grafted into a standard charge, could mislead a jury or involve a court inappropriately in the evaluation of evidence. A trial court therefore cannot be faulted if it is cautious in adopting explanatory language — particularly when, as in
 
 Mike,
 
 that language originates in our review of a bench trial and hence is not addressed to jury instruction issues.
 

 Here, the charge as a whole adequately conveyed the required standard. The trial court defined “knowing” conduct and, albeit within a charge on participation in the crime of a codefendant, further explained when conduct is “intentional.” There can be little doubt that a jury so instructed would grasp that to offer to sell a drug, defendants had to intend the sale. Similarly, the charge stated that the People must prove that defendants made their offer “knowingly” and that “[a] person knowingly sells cocaine when that person is aware that he is selling cocaine.” Such awareness presupposes the ability to sell. Moreover, the issues presented to the jury were well defined by the parties’ closing arguments, with appropriate references to the trial evidence.
 

 Although the charge here was clear enough, the better practice for the future would be for jury instructions, in cases where the People allege an offer to sell drugs, to indicate that this theory requires proof that the defendant had the intent and ability to make the sale. Indeed, a previous case squarely addressed to jury instructions had presaged such an addition, upholding a charge indicating that the defendant’s guilt could be based on an offer to sell drugs even if actual delivery did not occur, and requiring the jury to find that the offer “was made in good faith * * * and with intent at the time” to deliver cocaine
 
 (see People v Mullen,
 
 152 AD2d 260, 266 [1989] [Levine, J.] [internal quotation marks and emphasis omitted]).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In each case: Order affirmed.
 

 *
 

 In fact, Price had a small amount of crack, but this evidence was suppressed.