**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1683
_____

UNITED STATES OF AMERICA,

v.

NATHANIEL RODRIGUEZ,
                              Appellant

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(E.D. Pa. No. 2-16-cr-00014-001)
District Judge: Hon. Jan E. Dubois

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 11, 2018

Before: CHAGARES, GREENBERG, and FUENTES, Circuit Judges.

(Filed: August 14, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Nathaniel Rodriguez was convicted of two counts of kidnapping in violation of 18 U.S.C. § 1201. The United States District Court for the Eastern District of Pennsylvania sentenced him as a career offender under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1. On appeal, Rodriguez argues it was plain error for the District Court to consider him a career offender. For the foregoing reasons, we will affirm.

I.

Rodriguez pleaded guilty to two counts of kidnapping in violation of 18 U.S.C. § 1201. Rodriguez's criminal history was extensive, and included three convictions for "manufactur[ing], deliver[ing], or possess[ing] with intent to manufacture or deliver a controlled substance" in violation of 35 Pa. Stat. and Con. Stat. § 780-113(a)(30) ("the Pennsylvania statute"). Based on those prior convictions, and the crimes for which he was being sentenced, the Presentence Investigation Report ("PSI") described Rodriguez as a career offender. As a result, the PSI calculated Rodriguez's total offense level at 34 and his criminal history category at VI, resulting in an advisory Guidelines range of 262–327 months. Had Rodriguez not been sentenced as a career offender, his total offense level would have been 31 and his Guidelines range would have been 188–235 months.

At sentencing, Rodriguez did not object to his status as a career offender. He did, however, argue for a downward variance based on his personal history and characteristics. The District Court granted Rodriguez's request and sentenced him to 228 months of imprisonment, 34 months below the bottom of his advisory Guidelines range. Rodriguez timely appealed.

2

II.[1]

On appeal, Rodriguez argues that he should not have been considered a career offender for two reasons. First, he argues that his crimes of conviction were not "crime[s] of violence" under U.S.S.G. § 4B1.1(a). Second, he argues that his prior convictions were not "controlled substance offense[s]" under § 4B1.1(a).

Because Rodriguez did not object at sentencing, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Jones, 740 F.3d 127, 132 (3d Cir. 2014). To show plain error, an appellant must demonstrate (1) an error, (2) that was plain, (3) that affected his substantial rights. United States v. Knight, 266 F.3d 203, 206 (3d Cir. 2001). An error is "plain" if it is "clear or obvious." Molina-Martinez v. United States, 136 S. Ct 1338, 1343 (2016). Even then, we may only exercise our discretion to grant relief if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings," although we will generally exercise our discretion to recognize a plain error in calculating a defendant's guidelines range. Id. at 206 & n.7.

A defendant is eligible for the career offender enhancement if (1) he was at least eighteen years old when he committed the crime for which he is being sentenced, (2) his "offense of conviction is a felony that is either a crime of violence or a controlled substance offense," and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

A.

An offense is a felony "crime of violence" if it is punishable by more than one year of imprisonment and either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is" one of a list of enumerated crimes including "kidnapping." U.S.S.G. § 4B1.2(a). We use the categorical approach to determine whether a defendant's conviction qualifies as a crime of violence, comparing the elements of the statute under which the defendant was convicted to the Guidelines' definition of crime of violence. United States v. Chapman, 866 F.3d 129, 133–34 (3d Cir. 2017).

For the enumerated crimes of violence listed in § 4B1.2(a)(2), courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e. the offense as commonly understood." United States v. Brown, 765 F.3d 185, 189 (3d Cir. 2014) (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)). An offense will qualify as one of the enumerated offenses only if the elements of the offense "are the same as, or narrower than, those of the generic offense." Id. (quoting Descamps, 570 U.S. at 257).

Rodriguez was convicted under the federal kidnapping statute, 18 U.S.C. § 1201. A person is guilty of federal kidnapping if (1) he "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away" a person, (2) he holds the victim "for ransom or reward or otherwise," and (3) the kidnapping involved one of a list of jurisdictional nexuses. 18 U.S.C. § 1201(a); see also Chatwin v. United States, 326 U.S. 455, 459

4

(1946). We must compare this statutory crime to the generic definition of kidnapping under the Guidelines.

To determine the elements of "generic" kidnapping, a court must survey the "form of the offense as defined by the States, learned treatises, and the Model Penal Code." United States v. Marrero, 743 F.3d 389, 399 (3d Cir. 2014) (quoting United States v. Lockley, 632 F.3d 1238, 1242 (11th Cir. 2011)). From this broad range of information, a court must "distill a 'generic' definition of the predicate offense." United States v. Peterson, 629 F.3d 432, 436 (3d Cir. 2011) (quoting Taylor v. United States, 495 U.S. 575, 598 (1990)).

Rodriguez's argument primarily relies upon a case from the Court of Appeals for the District of Columbia Circuit in which that court conducted a nationwide survey of kidnapping laws to determine whether a Virginia kidnapping statute qualified as generic kidnapping. See United States v. De Jesus Ventura, 565 F.3d 870, 876–77 (D.C. Cir. 2009). The court in that case divided fifty-two jurisdictions' definitions of kidnapping into four categories. The first, adopted by twenty-two states and recommended by the Model Penal Code, included a "nefarious purpose" as a required element of kidnapping. Id. at 876–77. The second, adopted by five states, included a different "heightened intent" element. Id. at 877. The third, adopted by seventeen states, had no heightened intent requirement but required "aggravating conduct or circumstances . . . for a crime to constitute kidnapping." Id. The fourth, which consisted of six states' kidnapping statutes (including the Virginia kidnapping statute), the District of Columbia's kidnapping statute, and the federal kidnapping statute, required "nothing more than intentional and unlawful

5

. . . restraint of the victim." Id. at 877. The court held the Virginia kidnapping statute did not qualify as a generic kidnapping because "fifty-four out of fifty-two" jurisdictions "require[d] some additional element of intent or severity." Id. at 877–78.

Even if Rodriguez could show the District Court erred by considering his convictions under 18 U.S.C. § 1201 to be crimes of violence, any error was not plain. Rodriguez cites no case in which any court has held that federal kidnapping is not considered "kidnapping" under U.S.S.G. § 4B1.2(a)(2). The conclusion that the federal kidnapping statute does not describe a kidnapping offense is counterintuitive. Although the argument on which Rodriguez relies is essentially identical to the one that persuaded the Court of Appeals for the District of Columbia Circuit, that argument does not persuade us that the relief Rodriguez requests is appropriate for two reasons. First, it is not clear or obvious that the diversity of kidnapping statutes throughout the country — in which no one definition of kidnapping holds a majority — results in a generic definition of the offense that requires one of multiple possible additional elements. Second, Rodriguez's argument requires parsing kidnapping statutes and caselaw from every jurisdiction in the country, then distilling the results of that inquiry into a single generic offense. We cannot say the District Court's error, if any, was clear or obvious when the claimed error could only be discerned through such a broad, complex analysis unguided by clear-cut rules of interpretation.

B.

An offense is a felony controlled substance offense if it is punishable by more than one year of imprisonment and it involves "the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). As we do for crimes of violence, we use the categorical approach to determine whether a defendant's prior convictions qualify as controlled substance offenses. United States v. Abbott, 748 F.3d 154, 158–59 (3d Cir. 2014). Rodriguez's criminal history included multiple convictions under the Pennsylvania statute, which prohibits the unauthorized "manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." 35 Pa. Stat. and Con. Stat. § 780-113(a)(30).

On appeal, Rodriguez argues that the District Court plainly erred by considering his prior convictions to be controlled substance offenses because a person can be convicted under the Pennsylvania statute for "delivery" of drugs. According to Rodriguez, the term "delivery" in the Pennsylvania statute encompasses offers to sell, while the term "distribution" as used in U.S.S.G. § 4B1.2(b) does not encompass offers to sell. Pennsylvania defines "delivery" in this context as "the actual, constructive, or attempted transfer from one person to another of a controlled substance." 35 Pa. Stat. and Con. Stat. § 780-102(b) ("'Deliver' or 'delivery'"). Rodriguez's argument relies primarily upon this Court's non-precedential decision in United States v. Glass, 701 F. App'x 108, 113 (3d Cir. 2017) (unpublished), in which the Court denied an Anders motion, holding that the appellant had a "nonfrivolous argument that" the Pennsylvania

7

statute was not a controlled substance offenses because "delivery" could include mere offers to sell.

Like this Court did in <u>Glass</u>, Rodriguez analogizes to a decision from the Court of Appeals for the Fifth Circuit in which that court held "delivery" as used in a Texas drug statute encompassed offers to sell, and therefore was not a controlled substance offense. See <u>United States v. Hinkle</u>, 832 F.3d 569, 572 (5th Cir. 2016). While it is certainly not frivolous to argue that the Pennsylvania statute penalizes offers to sell by including the language "attempted transfer" in its definition of "delivery," it was not plain error to say that the Pennsylvania statute does not include offers to sell. Unlike the Pennsylvania statute, the Texas statute in <u>Hinkle</u> explicitly included "offer[s] to sell" in the definition of "deliver." See <u>id.</u> (quoting Texas Health & Safety Code § 481.002(8)). Although both statutes use the word "delivery," it is not plain that that term carries the same meaning because both statutes explicitly define "delivery" differently. Moreover, Rodriguez has not cited any case in which a person has been convicted or even prosecuted under the Pennsylvania statute for a mere offer to sell. While Rodriguez would have had non-frivolous arguments had he objected below, those arguments are not sufficiently clear or obvious to demonstrate that the District Court plainly erred by sentencing him as a career offender.[2]

---

[2] Rodriguez also argues that the Pennsylvania statute, when combined with Pennsylvania's law imposing accomplice liability, 18 Pa. Cons. Stat. § 306, encompasses conduct not covered by 21 U.S.C. § 841(a) and therefore is not a controlled substance offense. This argument does not demonstrate that the District Court plainly erred. We compare a defendant's prior conviction to U.S.S.G. § 4B1.2(b)'s definition of "controlled substance offense," not any particular federal statute. Moreover, Rodriguez has offered

8

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

no argument why a person who is convicted for being an accomplice to a controlled substance offense would not himself be guilty of a controlled substance offense. Therefore, Rodriguez has failed to demonstrate that the District Court plainly erred.